and Mr. Beaulieu. And on appeal we first have Ms. Barris representing Mr. Oscar. Thank you. And we know you were on time and we appreciate it, as you always are. May it please the Court, Laurie Barris, Assistant Federal Public Defender, on behalf of Jean Oscar. The issue I will be discussing this morning is whether the District Court's actions in removing the lone holdout juror violated Mr. Oscar's due process right to be found guilty only upon proof beyond a reasonable doubt, as well as his Sixth Amendment right to an impartial, uncoerced jury. Did the judge know that this was a holdout juror? As I read the transcript, he was pretty careful to say, don't tell me what's going on. Well, there was two different discussions, and the first discussion, I don't believe that on Monday, the first day he knew that she was a holdout juror, although she did say, I cannot agree with what the other jurors are saying, so perhaps he did know. But by the second day, he certainly knew, because the foreperson identified her and said, it's Ms. Hill, and it's counts three and eight. And there were 15 counts, so the jury had reached verdicts as to 13 of the 15 counts. The Constitution requires a jury that's capable and willing to decide a case solely on the evidence before it, and a judge ever watchful to prevent prejudicial occurrences, and Mr. Oscar had neither. From the very beginning of the deliberations in this case on a Friday afternoon, a juror, another juror, complained to the judge that she was getting pressured, she's getting nauseated, and she was getting physically ill as a result of the pressure being exerted there. As you indicated, Ms. Barris, those were two different jurors, right? It was not the same one. This is the first day. The deliberations started. Right, but it turned out that that person was not the juror who was removed. Different. Right. The deliberations resumed after the weekend, and soon after, the judge received a note saying, does it have to be a majority decision, or does it have to be anonymous, or is majority enough? And then he received the note from Ms. Hill stating that while she stressed having no bias, that has changed and she wants to be excused. So over objection, the district court interviewed Ms. Hill. She explained that the other judges had biases about certain kinds of people, had already made up their minds, and were not willing to discuss the case from the very beginning. When the judge said, well, is there anything specific that a juror has said? She said, not directly. The judge asked her whether her beliefs were based on the evidence in the law, and she said, yes, she said, I just do not agree with the other jurors. So maybe in answer to your question, Judge Boggs, on the first day, the judge knew. Despite the government's request to dismiss her and Mr. Jean's motion for a mistrial, the judge said that there was no basis to remove her. Instead, I'm going to give an al in charge. And the deliberations continued for the rest of that day. They started the next day. Now we're on the third day, Tuesday. They started around 9 o'clock in the morning. Everything was going along about 12, 30. The judge got three different questions from the juror, asking to see the guns, asking questions about possession, and also questions about a witness's testimony. The judge answered those questions. Just before 5, the court received a note from one of the jurors stating that one of our jurors wants a hung jury as to counts 3 and 8, and she isn't following the law. At this time, Mr. Oscar moved for a mistrial, again, which was denied. And then the court interviewed the foreperson, established that it was Ms. Hill, that it only counts 3 and 8. He said to the foreperson, has she said I'm not going to follow the law? No. Has she said I'm not going to be fair or I'm going to be biased? No. But it is your feeling that she is not following the law? Yes, judge, all of us feel that way. So next the court interviewed Ms. Hill. He established that verdicts had been reached on many of the counts. She said she wasn't sure if it was 3 and 8, but verdicts had been reached. And then he asked her, in the verdicts that you are not in agreement with the other jurors, do you believe you were following the law and applying it to the evidence? And she said, I tried to, yeah. Then he asked her, are you following the law and you have a different opinion about what the result should be, or are you absolutely refusing to follow the law? And she didn't say that she was refusing to follow the law. She said that I don't think that some of the decisions I made, I really did follow the law. There was a lot of emotions. It was back and forth. Some of the stuff I can't say was fair to the defendants. And she told the judge that it got a little better after he spoke to them, I guess gave the Allen charge. Things cooled down a little, but it's just butting heads and we're not getting anywhere. She told the court that she was a civics teacher, that she had come in thinking that there was a system that was fair and equal to everybody, but these people come in here biased. They have feelings about people that are different from them. You look like me, meaning her, and whatever you say must be wrong. The judge said, well, is there anything objective that you can point to, or is it a feeling because they have a different view of the evidence? And then she told the judge, they're disrespecting me as I speak. They're making little noises. I'm trying to speak, but they're ha-ha, I want to go home, I'm ready to go. I wish I was at work. She said, they're ready to go home, I'm ready to go home, and we're stagnated here. Then she started crying and told the judge that this bullying never would have stopped, never would have slowed down if she hadn't come in there and said something, and she's been hurt by a system she believed in. She thought everybody should get a fair trial, and she doesn't think like them, the other jurors, because they just want to send everybody to jail and they don't care. Again, Mr. Oscar moved for a mistrial, stating that intimidation has no place in the jury room, and instead the court dismissed Ms. Hill and seated another alternate who was also a black female. This was error. The case law is clear. A district court should only dismiss a juror during deliberations when no substantial possibility exists that she is basing her decision on the sufficiency of the evidence. And in Abel, this court stated that this must be a beyond a reasonable doubt standard. The court's factual findings in this case do not rise to that level. First, he found that Ms. Hill was refusing to deliberate. She was not refusing to deliberate. She had reached verdicts in 13 of the 15 counts. She simply found, as to those other two counts, that there was insufficient evidence. In excusing Ms. Hill, the court stated that this is the second time that her possible bias has been brought to our attention, and possible bias is not actual bias, and it's also not proof beyond a reasonable doubt. He said she couldn't identify anything that the other jurors said, showing that they were biased. She told the judge, these are intelligent people. They are not going to come right out and say, I'm not going to listen to anything you have to say just because you're of a different race than me. He said that by her own admission, she was not following the law, but she told the judge that in the verdicts that she did not agree with the other jurors, she tried to follow the law, and with the verdicts that she did agree with, she wasn't sure. Maybe she did not really follow the law, but still. Is that where the judge was referring? It's on page, one of my references, page 27. I don't think that some of the decisions I really did follow the law. Is that probably what he's referring to? Yes. That was the decisions that she agreed with the other jurors in. We don't know how many, but. Why do you say that that, what do you refer to? He asked her, are we talking about the decisions that, let's see. I'm looking at page 27, line 14, 15 was the quote I just gave you, and I didn't, I'm not focusing on something that would imply that that has to do with the ones that were agreed to. She answered him, I don't think that some of the decisions I really did follow the law, and he said, are you talking, it goes on, are you talking about decisions you made where you agreed with the other jurors, or the decisions you made that you did not agree with the other jurors? She goes on, page 27, the decisions I said I agreed with. It was back and forth. The decisions I agreed with. Well, I'm not sure the it was back and forth, whether that, okay, but that's what you're referring to. I can look at it. Thank you. Yes, Judge, and again, you said it. I mean, that is still not proof beyond a reasonable doubt that she was not following the law. Did either, the question of the standard from 11th Circuit precedent, did either side ask the judge to state what standard he was using? No, but it's not necessary for the judge to have stated under the 11th Circuit case law, as long as he is required to find beyond a reasonable doubt that there was no substantial possibility, but does he have to say those exact words, no substantial possibility? Not under the. Okay, that was what I was referring to. Thank you. Finally, he pointed to her diatribe about injustice going on for more than 100 years, meaning that she had some humongous racial chip on her shoulder, which was making her unable to participate. Just because you have opinions about the 100 years of racial inequality and injustice in this country doesn't mean you can't deliberate or follow the law. And so what if she felt protective of her people? She was making sure the law was being followed, and she had, in fact, returned 13 of the 15 counts. Abell specifically cautions about this exact situation where the other jurors in favor of conviction are trying to strong arm the holdout, and when that doesn't work, they falsely report to the judge that she's not following the law. Unlike the other court's decisions, Abell, Augustine, and Godwin, where the district court interviewed all the other jurors, here he just took the word of the foreperson that we all agree that Ms. Hill is not following the law. And as Judge Boggs pointed out, the standard in reviewing the district court's findings on whether good cause existed is deferential to the district court. This court is not required to rubber stamp its findings. A review for clear error does not mean no review. And particularly in light of the recent Supreme Court decision of Pena-Rodriguez, which recognized that juror misconduct strikes at the very heart of the Sixth Amendment, the court must be extra vigilant to ensure that racial prejudice or intimidation has no place in this jury room. The only other issue I had was that once he removed Ms. Hill, then another juror had a family member who was dying, and then he removed her also, so now we have two alternate jurors. And he did tell them to begin their deliberations anew, but unlike the other cases in this district, he did not ensure that they began their deliberations anew. He did not ask the jurors whether they can start from scratch. He didn't ask the two new alternates who have been gone for five days now whether they have read anything about the case or had any exposure to extrinsic evidence about the case. He didn't remove the original jurors' notes. He didn't remove the original jurors' verdict forms. He did give them new verdict forms, told them to use the new verdict forms, and he did not re-instruct the entire panel. As to those alleged deficiencies, did anybody ask him to do those things? No. I didn't want to ask this during your time, but now that you're over, do we know the entire racial composition of the jury, or we don't know that from the record? We don't know, but from what I can gather from reading it, but that's just my opinion, she was the only black on there because he made a point of when he removed her of stating, okay, now we're bringing on another African-American female to replace her. I had wondered why you had pointed that out, so now you're explaining why. But the alternate was simply the regularly constituted alternate. He wasn't? Well, she was a she. Okay. The first one was a she. Right, and the second one? The second one was a? I thought you just said another African- No, no, no. The first person he replaced Ms. Hill with, let's just call up the next person, she was a black female. Okay, that's what I meant. I mean, he wasn't selecting that alternate. She was the next alternate in line. Right, and then the next one, I don't know if it was a man or a woman what it was. Basically, this violated, this was inconsistent with Mr. Oscar's Sixth Amendment right. When the foreperson announced that the jury was hung as to three and eight, there should have been a mistrial. As this court stated in Ray, our jury system has not malfunctioned when the jury cannot reach a verdict. There was no necessity for the judge to invade the province of the jury or the privacy. You've saved time for rebuttal, so. If you don't have any other questions about issue two, I will just stand on my brief there. You don't waive anything by? Ms. Joinder, the improper Ms. Joinder. Right. Okay. Mr. Kastner? He's got ten and five, and Ms. Barris, you had twelve and three. But you'll keep your full three. Excuse me. Thank you, Your Honorable Court. First of all, I apologize for being late. The road that I normally use to get here seemed to be blocked by a tree that I didn't expect. We're just glad you're here. You may proceed. Thank you. Judge, Your Honors, I represent Hypico-Ballou, and we have adopted many of the arguments that Gene Oscar has put forward before this court. The particular issue in this case concerning Juror Hill, who was the juror that was dismissed, is particularly important to Mr. Ballou because the counts that the juror or Ms. Hill or the jury indicated that they were hung on were counts three and count eight. Count three and count eight applied specifically to Mr. Ballou. Count three was a drug distribution case, and count eight was a possession of a firearm by a convicted felon. I think it's important for the court to realize that the rule that governed these proceedings and whether or not Ms. Hill could be dismissed as a deliberating juror is Rule 23B of the Federal Rules of Criminal Procedure. That rule basically says that if a judge finds that a deliberating juror for good cause can no longer perform their duties, then the judge may dismiss that juror and proceed with 11 jurors. Good cause, though, is never defined, and that's important as far as this case is concerned because there are different standards that the district court has to apply in determining whether or not a particular juror on a jury that's deliberating should be removed. For instance, if a juror has a heart attack, certainly under those circumstances it would be good cause for the judge to remove that particular juror. Or, if God forbid, a juror who's on a deliberating jury should get arrested in the middle of deliberation. Certainly under those circumstances, that would be good cause for the judge to remove that particular juror. However, the appellate courts, and this court specifically, have pointed out that when you're dealing with the issue of nullification, nullification means basically that you have a deliberating juror who is not following the law and not applying it to the sufficiency of the evidence. In that case, the standard that the district court has to apply is much higher than any of the other standards that the district court has to apply in removing a deliberating juror. In that case, as this court held in Abel v. United States, which I agree is precedent, that juror cannot be dismissed if there is no substantial possibility that the juror's decision is based on the law or the sufficiency of the evidence. And in the Abel court, in the Abel opinion, this court made clear that as far as that standard is concerned, that is proof beyond a reasonable doubt. And that's the standard that should have been applied in this particular case. Proof beyond a reasonable doubt that Ms. Hill was not basing her opinion on anything other than the sufficiency of the evidence and the law that the court has applied. Now, as far as that case is concerned, Abel referred to two other court cases in its opinion. It referred to United States v. Thomas, which was a Second Circuit court case, and also United States v. Brown. And in United States v. Thomas, you had a similar situation to the situation that you had as far as Ms. Juror Hill is concerned. In that particular case, you had a black juror who throughout the summation of the defense consistently said yes, yes, yes, and indicated that they had agreed. There was a number of notes from the jury to the clerk indicating that the deliberations were going to take a long time because juror number five, who was the black juror, consistently voted not guilty. At one point, one of the notes indicated that the juror, juror number five, had indicated his fellow jurors were racists and so forth. The court in that case questioned juror number five, and juror number five said that he was following the law and basing it on the sufficiency of the evidence, and the evidence had to be sufficient before he could find beyond a reasonable doubt that the defendants in that case were not guilty. And in that case, the judge dismissed the juror, claiming that he didn't feel that this particular juror under any circumstances could find the defendant guilty. And the Second Circuit reversed. The Second Circuit basically said that one of the principles that's involved in nullification is jury secrecy, and the court has to be very careful not to invade the secret process of the deliberations that are occurring in the jury room. And the court in that case, in the Thomas case, said that if there is any evidence that the juror is basing their decision on the law and the sufficiency of the evidence, then the juror cannot be dismissed, and the Second Circuit reversed that particular case. In this case, would you point to anything in the interrogation of Juror Hill that was as strong and eloquent as the Second Circuit case on Thomas? That is to say, at least by my reading of it, there's at least a fair amount of back and forth about I'm biased, I'm not biased, I wasn't biased, but now maybe I am, and certainly nothing as eloquent as you just quoted me from Thomas. Well, I'd answer the court this way. First of all, in questioning Ms. Hill, she specifically said over and over again that she had based her decision on the law and the sufficiency of the evidence. Now, Judge Scola, when he made his decision to remove Judge Juror Hill, said that she had engaged in a diatribe and that she had a humongous racial chip on her shoulder, and that is the reason why he was dismissing her. What I would put forward to this court is what may be a diatribe to a judge or a lawyer, to a common average person is not a diatribe. Counsel, you said that she said she was basing it on the law and the evidence. Can you point me to your best quotation for that? If the court could give me a second. Sure. Well, first of all, at one point the court asked her, in the first discussion he had with her, concerning her feeling that she was biased, the court says to her, and her answer is, quote, I have an open mind, unquote. And then she says, since I know they don't have an open mind, I had an open mind, I don't have an open mind now. So that sounds contrary in the first one at least. I didn't know if you had something better in the second one. Well, I would point out to the court, as far as that conversation is concerned with Judge Shkola, that would seem to indicate to a reasonable individual that basically she went in there with an open mind. She was discussing the evidence and applying it to the law. Okay, well, that's fine. I just wanted to see if you had a quote that I had missed, more like the comment. Well, I do. At one point in time when the court is questioning Ms. Hill, and this is after the Allen instruction, and the court noted to her, you deliberated all day yesterday and today, the court asked her, are you applying the law and are you applying it to the evidence? And Ms. Hill answered unequivocally, yes, I did apply the law and the evidence. The problem is ‑‑ Sorry, counsel, can you give me the page you're on? No, I'm sorry. I didn't mark where that is. Okay, because the part, at least the part that you just asked about Judge Shkola's question, sounds like the middle of page 27. Do you think you're following the law and acting in good conscience? And then she says, I don't think that some of the decisions I really did follow the law, and then I had the colloquy with your co‑counsel or your co‑defendant's counsel. So if that's the part you're talking about, then I've got it. So go ahead with your time. I think if the court reads the statement that Ms. Hill made to Judge Shkola at that point in time, it's important to remember that she had already been through more than ten hours of deliberations with this particular jury. It was obvious that she was in the minority. Whether or not she was the holdout juror or there were other minority jurors that held her position is unclear because we don't really know what was going back there. But what she stressed over and over and over again was that she was basing her decision on the law and the sufficiency of the evidence, and that when she did this and tried to discuss this with the other group of jurors, they were entrenched as far as their position is concerned, that she was trying to discuss this and argue these points with the other jurors, and they were disrespecting her. So when she says, I think I made a fair decision, but I'm not sure whether or not I made a fair decision, it's important to remember that she made that decision after the court had already given the al in charge. So in all probability, when she made that decision, I think I'm following the law but I'm not sure whether or not I'm following the law, I think she was referring to whether or not finding the other defendants guilty on the other counts was in fact fair to them. And at some point in her answers to the court, she indicates that she feels that she did give them a fair trial. I can only imagine that it must be very difficult for a juror who's in the minority, especially a holdout juror, all right, to have an abiding conviction as far as their opinion is concerned and have to argue it against 11 other individuals. This obviously was a very emotional situation. I don't think that Ms. Hill, under these circumstances, should be penalized because she got emotional about deciding whether or not these individuals deserved to go to jail. Everything she said indicated that she was doing the best she could. I think it's also important for the court to see the timeline. Do you agree with the reading of your co-counsel that they're saying at this point it's only hung jury for counts three and eight so that they had reached a verdict on the other counts? I agree with that. Okay. You think they hadn't resolved all the other counts and we're down to three and eight? We're down to three and eight, and I think it's important for the court to realize when that situation Why could you declare a mistrial on counts three and eight and take the verdict on the remaining counts? Of course the court could do that. That's been done a number of times in the Southern District of Florida. Did anybody ask them to do that or just ask for a mistrial? A number of attorneys in the record asked for the court to declare a mistrial on counts three and eight and to take the verdict on the remaining counts. Could we do that here given the record as a whole? To the extent there was a problem, she only had a problem on three and eight, and that's what's going to be hung. I don't know. Frankly, this is a difficult case. It's not like a normal situation here. The problem the court has— You all are minimizing somewhat what she's saying. She's crying. She's emotional. I can't do this. There's lots more. I have the whole transcript here of all three days. I can see why the district court, because she was so emotional and crying two or three times, could say, Look, I'll just let you go. Yeah, but the court has an obligation to make sure that the defendants get their Sixth Amendment right. I agree with that. That's why we have our oral argument here today, because it's a difficult case. That's why you're here. In this situation, I mean, we can all guess on what the verdicts were on the remaining counts as far as count three and eight is concerned, but nobody knows for sure what those verdicts were. And the deliberation, at least, was stated to start anew. That is, after the new two new jurors came in, they could have flipped the people in either direction, because we don't know what the original set was, assuming that they were all decided, right? That's very possible. And I think also what's critical here is that there's a timeline. I mean, in the Abel case, all right, the judge in that case, first of all, made a finding on the record concerning the standard that he was applying, no possible reason to believe that the juror was basing their decision on the sufficiency of the evidence. In the Augustine case, which is cited by the government, again, the district court in that case, before dismissing the juror, made a finding that there was no substantial possibility that the juror was following the law on the evidence. In this case, there's no finding whatsoever as to what standard Judge Scola applied in dismissing Juror Hill. Was he required to? Because I asked your colleague the, I thought, the similar question, and I thought I heard her say that he didn't have to, but that our review for clear error is not no review at all, that we would apply some searching review, but nevertheless, under the clear error standard. I mean, is that your view, or is there a difference of view? No, I have a difference of opinion, because every case I read concerning the removal of a juror for nullification, the district court specifically spelled out the standard that it was using in order to find that the judge or the juror was not following. I mean, that's certainly helpful, but I guess I'm asking, is that required under 11th Circuit precedent? Well, I can find no precedent that says that it's required. But Coon v. United States, which is a Supreme Court case, specifically says that before the court can decide whether or not a district court abused its discretion, the appellate court has to know what standard the district court applied. Certainly, the district court in Abel and the district court in Augustine,  made the finding on the record that there was no substantial possibility that they were basing their review or their decision based on the law and the evidence. One other question Judge Hall had raised about whether we knew that they had agreed on the others. The note, as I understand it, the note that came out at one point says, a juror has expressed that the evidence is irrelevant and wants a hung jury, four counts, three and eight. Is that the only reference that we have? Because that seems to me to be possibly ambiguous. She wants a hung jury on those two, and we may still be deciding the others. Is that the only relevant piece of evidence? As far as the decision on three and eight, yes. But I think it's also important to realize that the jury foreperson, when he was questioned by the district court, specifically as to whether or not she had used those words, I'm not following the law, I want a hung jury, I'm not going to follow the evidence in this case, had to constantly say no. And the other thing that's different in this case than in the Abel case and the Augustine case is the chain of events. In this case... You're out of time. You're going to have to reserve. Thank you. I appreciate it. Thank you very much, Your Honor. Mr. Schlesinger. May it please the court, counsel for the appellants, good morning, Your Honor. Seth Schlesinger for the United States. And I did also serve as lead trial counsel in the district court in the case. With me at counsel table is AUSA Nicole Mariani, who authored the government's brief in this case. Your Honor, as the court's been discussing with the appellants, Rule 23 allows a district court to exercise its discretion to dismiss a juror for good cause. And good cause includes a situation in which there's no substantial possibility that a juror is basing his or her decision on the evidence and the law. In Abel itself, this court noted that a substantial possibility means more than a speculative hope. So a district court's decision on whether to excuse a juror is reviewed for clear error. Now, this matter first came to the district court's attention on the second day of deliberations with a note completed and submitted by juror number 11, the disqualified juror herself. And that note read, I respectfully request your attention to a matter concerning this case. I'm aware that I stressed having no bias concerning this case. However, this has changed. Please excuse me from this case. So straight away, right away in the initial consideration of this issue, the juror has described herself as having been biased to the extent that she should be disqualified from the case. Now, the court then did have a colloquy with the juror. And at that time, the juror did give some equivocal answers regarding whether she felt that she was biased, as she'd indicated in her own note, or whether she was actually accusing other jurors of being biased. It's certainly of note that at no time during that initial colloquy did she, of her own volition, indicate that she was taking her position based on the evidence or the law. The best that that juror could offer in that regard during that initial colloquy was a series of three just straight yes answers in response to what were effectively leading questions by the district court about whether she was properly doing her duties and basing her position on the evidence and the law, to which she ultimately did answer yes a couple of times. That's at docket entries 509, pages 17 and 18, about which Judge Boggs was asking a little bit. But other than that – But to take the other side of that coin, the foreperson couldn't say directly that she wasn't following the law either. Well, that's – I apologize, Your Honor, yes. And the foreperson, when being instructed – when being colloquied by Judge Scola had been instructed directly to answer yes or no. And that was because the district court was understandably inclined to exercise a substantial amount of caution, did not want to intrude unnecessarily into the jury's deliberation. So at docket entry 404, at the bottom of page 24, the district court asked the foreperson, has she used the words meaning Ms. Hill, juror number 11, I'm refusing to follow the law, or is she just not agreeing with you, and that's your assumption. And the foreperson answered, I don't know how to say this, but I mean without – the district court said, well, let me ask you a question. Just answer yes or no. Has she used the term, I'm not going to follow the law? And the foreperson answered, no, not in those terms. And I think that's important to clarify because I think opposing counsel Ms. Barrist suggested during her argument that the foreperson answered just no, but actually the answer was no, not in those terms. And it continued with the district court asking, okay, and has she ever said I'm not going to be fair or I'm going to be biased? And again, the answer was not in those words. Why isn't this a case where given that they had apparently reached verdicts on all counts except two because not only did the foreperson indicate that, but in response to one of the questions Judge Boggs asked, she also says that in response to a question from Judge Kola, why isn't this a case where one juror is at loggerheads with the others on two of the counts and they just won't agree? And the people on different sides of that divide think that the other side is being unfair and irrational and biased. Well, they may have been able to agree on some counts, but there's really I think a rather thin evidentiary basis for concluding on which counts they may have been able to agree to. I know the juror sent a – the foreperson sent a note indicating that there were two particular counts as to which there were problems reaching a unanimous decision. We have no way of knowing whether that could have changed subsequent to that in the substantial additional deliberations that occurred after that. Even prior to – In the second interview, this may – I think is what Judge Jordan was adverting to. The judge says, so is it my understanding you've been able to reach a verdict on many counts except for three and eight? She responds, I'm not sure of the counts, but there were about a few that weren't. Is that the only part of the juror's colloquy that adverts to that? That's the only part of the juror's colloquy, yes, Your Honor. And the only other indication would be the note from the foreperson from before. But again, the juror's deliberations could be quite fluid. We don't – even if they had breached – even if they had reached what they maybe at that time considered to be final decisions on certain counts, other than counts three and eight, that could certainly have changed after that. And all the more could have changed after two alternates were seated and they were instructed and are presumed to have, in fact, begun deliberations anew and reached the verdict that they ultimately gave. So I think it's quite clear from the record that any inability to reach a unanimous decision, whether it was to counts three and eight or to any other accounts, were not based on the juror's view, Juror 11's view of the evidence or the law as applied to the evidence, but really everything but. As Juror 11 said, among other things, in the course of her second colloquy with the district court, she said, I don't think that some of the decisions I really did follow the law. I just, you know, too many emotions are involved in it. And of course the emotion would be an entirely impermissible factor to influence a juror's deliberations. That's on page 27 of Docket Entry 404. On the same page, Juror 11 said, some of the stuff I can't honestly say that it's fair to them. I think what decision I made was fair to them, but then it wasn't fair to them. And I have to also clarify something here that Ms. Barris suggested. Ms. Barris suggested both in her brief and also in her argument here before the court that when Juror 11 said that she was not being fair to them, that she meant to the defendants, that she was not being fair to the defendants, and that's not supported by the record whatsoever. I don't know. I served as trial counsel in the case. I don't know that there's any indication in the record one way or the other of to whom Ms. Hill was referring when she said that, but there's certainly no indication that she was referring to the defendants as the parties to whom she could not be fair in the case. What were the other possibilities? The government. So in the end, I don't think it even – and I'm not suggesting that that was recorded in the transcript either, but certainly not that the contrary wasn't. And so in the end, I don't think it actually even really matters the identity of the party to whom Juror 11 cannot be fair. If she can't be fair to both parties, then she's not qualified to serve as a juror. That wasn't the only thing that Ms. Hill said. She ended up – she said on the next page, I searched myself and I cannot deal with that foolishness. You're dealing with too many emotions and too much baggage, and it's just hard dealing with that. She criticized the criminal justice system in general at some length. She opined, I came in here thinking blindly that we had a system that was fair and equal to all people. And skipping ahead a bit, she commented, my people didn't choose to be here, but since I'm here, this is what we're all about. We are all about freedom and equality, and that's not true. She commented, when you put me in that situation, and I know how people are thinking, then I can't do anything but say, look, it's not going to be like that. She went on, on page 30, she said, there's a situation where I can't even be fair because they're not fair. No, I'm not fair. Yes, I am biased, but I didn't cause it. I'm just defending myself. And several pages ahead on page 33, again, she said, you know, I'm not a good juror. I'm not, because I've been hurt by a system that I really, really believed in. I believe that everybody should get a fair trial. Oh, Lord, and it's not true. And it was at this moment that Ms. Hill dissolved in tears. And it is noted in the record that she was crying and that she made statements that were inaudible because in light of her emotional reaction, many of the things that she was saying were unintelligible. I need to clarify how this started with number 11. I know there was another juror that saw the judge as he was leaving on Friday and said she was upset and nauseated. That's a different one. But then we come back Monday. What is the first interaction that we have with juror number 11? You said there was a note. Yes, Your Honor. At docket entry 509, page 7, it's approximately 10 a.m. on Monday, June 9th, and the first interaction was the receipt by the court of a note. Okay, I now see it. I respectfully request your attention. I'm aware that I have stressed having no bias. However, this has changed. Please excuse me from this case. Then it says Rita Hill, juror number 11. Correct, Your Honor. So that's the very first note. Yes, Your Honor. She's initiating it herself asking to be excused. That's correct, Your Honor. Identifying herself, asking to be excused, and describing herself as being biased such that she should be. And then you say, I don't think she's asking to be excused, and you start asking for an alternate right then. That's correct, Your Honor. Go ahead and seek an alternate. Go ahead and excuse her. What she's saying right there in handwriting is her note. I'm aware that I've stressed no bias. However, this has changed. Please excuse me. Then the judge doesn't leap at the opportunity to excuse her. No. Correct, Your Honor. He denied the government's request. And the government made that request, I may note, before she just indicated in the note that she was biased without knowing towards or against which side. The foreman's note is later in the day after considerably more deliberation. Is that correct? The foreman's. You said 10 a.m. I heard you say 10 a.m. for the first note. Yes. For her note. And then the foreman's note about hung on 3 and 8. That was late in the day? It was later the next day. The next day. Okay. That was when they had initially asked to see some evidence and part of a transcript, right? Yes, Your Honor. And when the judge responded, he got that note back? Correct. And actually in that intervening period of approximately a day and a half between the first note and colloquy with Ms. Hill and then the next note with the foreperson, there were actually several inquiries and questions by the jury as a whole asking to see certain evidence. I think one of them requested a transcript of certain testimony and so forth. So in that intervening period, there were some additional other questions just about the evidence and not pertaining to this issue with juror number 11. I think when the court considers the particularly erroneous standard by which this court reviews the district court's decision reflects the fact that the district court's determination about whether a juror is following the law or not is a finding of fact. I think the reason for that is it's very important for when that decision is being made for the court making that decision to observe, not just sort of hear the read a cold transcript, but to actually observe kind of the demeanor and the tone that's being taken by the juror who's potentially going to be excused. So I think given the fact that this juror really, it's not just her answers although certainly the actual words that she used in her answers certainly did demonstrate quite clearly that she was not applying the law to the evidence. But the district court also had the opportunity to observe the rather extreme sort of emotional reaction that the juror displayed during the colloquy. So I think this is a particularly appropriate case. Was that colloquy where counsel for both parties present? Yes, counsel for all parties, for the government and for all three defendants at trial. In that second colloquy, not once, I looked at the transcript and I noted that the colloquy took about 17 minutes, not all of which but most of which, juror number 11, Ms. Hill, was permitted to speak in narrative form about the issues that she was having with the other jurors. Not once in that 17-minute colloquy did Juror Hill mention anything about the evidence and the law. It would be one thing if Ms. Hill had said something like, I just don't believe that he really gave this statement or I don't really believe that they found this gun there and the other jurors all believe it and we just can't agree. There's nothing like that. There's no reference at all in a very lengthy narrative portion of her colloquy that discusses anything about the evidence or the law. Instead, what Ms. Hill did mention many times was the overwhelming power of her emotions that she found to have infiltrated her decision-making in the case. She mentioned several times that at some length, her disappointment in the criminal justice system overall and also her felt need to, I suppose, to defend herself. After the first colloquy, Ms. Snyder was there and says the government's position is the same. Ms. Hill is asked to be excused because of her bias and she should be excused because of her bias. She said she answered questions during jury selection about her previous case. Apparently, she'd been on a previous federal case and the hung jury and now she realizes she's bringing up her bias and can't get rid of that. She says she's now in defensive mode. She refuses to set aside a bias, as she's said before, and I think there's no choice but to excuse her. This is before anybody knows about where anybody is on the verdict. Is that correct? Yes, it's before any note from the foreperson. Yeah, right. We'll first have her asking to be excused and then we have this colloquy. Yes, Your Honor. Y'all are just saying excuse her because she's gone back and forth. She does talk about that she had a prior federal case. She thought she would be able to put that aside. It was a hung jury. They were biased there. She doesn't think she can put it aside and she's still asking to be excused. Correct, Your Honor, which the court, of course, declined to do at that time. The court did not excuse her after that initial colloquy and, in fact, the jury did deliberate for a day and a half of court time after that before the issue sort of reappeared, starting with the note from the foreperson, after which the foreperson was briefly colloquied, and then Ms. Hill gave, again, as I described, this very lengthy colloquy, which, although it was quite lengthy and quite emotional, in no way touched upon the evidence or the law applicable to the case. How long was this trial as to the evidence? It was approximately four days. I believe approximately 74 exhibits were received. At a minimum, Your Honors, I don't think that this court can say that the district court clearly erred when considering the totality of the record consisting primarily of Ms. Hill's own statements, identifying herself repeatedly as biased, repeatedly as considering impermissible factors like emotion . . . I just say this so Ms. Barris can probably tell me it's irrelevant, but the judge does say, in twenty years as a judge, I've never moved a juror and I hesitate to do that. I don't know whether that's accurate or not. He keeps being hesitant to do it and keeps going back at it. I do think it reflects, and I don't know whether it's accurate or not, about the twenty years, but I think the judge's reluctance to excuse a juror is evident from the record even in this case. The judge, upon the note, declined to excuse the juror and decided instead to colloquy the juror even after the initial colloquy. The district court declined to excuse the juror and waited further, and it was only after, again, this subsequent very lengthy colloquy that contained this juror self-reporting her own litany of impermissible considerations. I think we've covered this issue and my colleagues. Thank you very much, Your Honors. And they didn't argue the other issues. If the panel has no further . . . Submit them on the briefs. Thank you very much, Your Honor. May it please the court. I just have a couple of answers to the questions that the court raised. First of all, Judge Boggs, the district court is required to apply the standard of no possibility exists, no substantial . . . Does he have to say the words, I find, that no . . . No. Okay. But he does have to. If we're in agreement. Okay. Now, there was a question as, how do we know that they had other verdicts as to all the other counts? I point the court to page 23 of the transcript, DE 404, page 23. Interview with the foreperson. Have you been able to reach verdicts on all other counts? Yes. Court, is it only those two remaining counts? Yes, only those two. Also with . . . What's interesting about that is your client is charged, I think it was 18 and 19. Your client's not in three and eight. I don't know that it matters to the outcome here, but Mr. . . . He's in 14 and 15, actually. There was 15 counts. He's only charged in 14 and 15. But he's not in three and eight. He's not in three and eight. That's correct. Three is a distribution count against the co-defendant and then a possession of the firearm by a convicted felon. Right. But we don't know what the counts were that had been reached. We know now . . . You were arguing they'd reached a verdict as to everything except for counts three and eight. Yeah, but we don't know what the verdicts are. We don't know what those verdicts were because he got rid of those verdicts. With the new juror and with the restarting, it could have come out different. We don't know. We don't know. We just know how it came out. We don't know how it was. Okay. Okay. And then with respect to the . . . Yeah, if he just proceeded with 11, then we probably could have taken the verdict there, but I think Judge Boggs is right. We started over, so we can't go back to what it was. What it could have been. We don't know what it was. All right. And also, the district court, when he interviewed Ms. Hill about her note, when she said, I express I have bias, he said to her, I am still trying to figure out why it is that you said you have a bias. Let me give you that page. Here, page 15 of DE 509. I'm trying to figure out why you think you have a bias. What you're telling me is I have an open mind and the other people are biased. And then he repeatedly asked her in that first colloquy, do you believe . . . But then you quote the judge accurately, but her response, at least the grammar, is I had an open mind. And then he says, I had an open mind. I don't have an open mind now. Right. I mean, the judge, you're right. At lines 14, 15, 16, the judge is kind of giving her a life raft, and she is contradicting him. When he says, I have an open mind, she says, I had an open mind. Right. But then he goes on to say, do you think that the people, that these people came in and from the very first second they were open, they weren't open to a discussion, and she said, they already figured out what they're going to do. He said, are you saying that they're closed-minded and not willing to fully deliberate? Yes, I do, sir. And then he said, do you believe that you have a strongly held belief after you have kept an open mind, after you have fully discussed the case with the other jurors, this is page 17, and you and the other jurors just can't agree. Yes, I believe so. And you believe that belief you have is based upon the evidence and the law? Yes, sir, I do. You're not just taking this position to be against the other jurors? This is your own personal belief after following the law? Yes, sir. I found a place where the judge says when he excuses juror number 11, he points out that still, even without her, there were two other African-American women on the jury. I don't think we're about a jury make-up here, but he says her comments about everybody being, the whole jury's against me, he points out that everybody's racist. He says, well, there are two other African-American women that are on the jury. You're not the only one. I don't know if that's just to discredit her saying everybody's against me. What do you think that's about? Or maybe it's irrelevant. To be honest with you, Judge, I don't remember seeing that in the transcript. I don't remember that. Well, I'll find it for you, but go ahead. Actually, you're out of time. Let's see if Judge Boggs, you were getting ready to ask for something. No, I think I'm good. We just ask that you reverse Mr. Oscar's conviction and remand us for a new trial. Thank you. Thank you. Let's see, you have three minutes, Mr. Kastner. I'd like to answer your question, Your Honor, Judge Hill. I think whether or not there were two other black female jurors on this jury is not relevant. What's relevant here is whether or not Ms. Hill, who was chosen as one of the jurors by both the defense and the government, was impermissibly discharged. Let's say we had stopped at just that first note. She says, I can't be fair. I'm biased. Please excuse me. I thought I could be. I can't. Could the judge have excused her at that time? No, I don't believe the judge could, and that's based on precedent in the Abel case, because the Abel case, as I indicated, originally cited the two other cases, United States v. Thomas, which was a Second Circuit case, and also another case which was United States v. Brown, which was a district court case. I mean, really, isn't that the first interview, if anything, the judge is trying to rehabilitate her, right? I mean, those questions which I think your adversary used the words leading questions, they sort of are, but he's doing his best to keep her on. It's the way I read that first interview. Well, I certainly don't think that Judge Scola was doing anything but following the law as he understood it. As the court had made clear before, Judge Scola, who I've known for a long time, I had the privilege of working with him. I wasn't saying something wrong with it, because the standard really should lean in that direction, right? Well, I think United States v. Brown, which was cited in the Abel court, basically answers or squarely addresses the issue of when a juror comes out and says you should dismiss me because I'm biased. What does it say? Well, in United States v. Brown, you had one. This was a complicated one. What does it say the judge is supposed to do? Well, the judge is supposed to conduct an investigation and determine whether or not the juror is applying the law to the sufficiency of the evidence and reaching their decision. And if there's any specific question as to whether or not he's doing that, the presumption that the court is to take is that, in fact,  this court has held over and over again that the court presumes that jurors follow the law. So there's a presumption that Ms. Hill, in this particular case, was following the law. In the Brown case, the juror at issue sent a note, just like Ms. Hill did, to the district court judge and said, I need to be removed. I'm biased. So the district court brought him out and questioned him why you think you're biased. And he specifically started to discuss the RICO Act, the way the RICO Act is written, the sufficiency of the evidence as far as the RICO Act is concerned. And the court went on to hold that. He doesn't know why. Your time has expired, so the case will be submitted. Thank you very much. Ms. Barras, it's page 43 of Document 404. The judge says, under the circumstances of the accusations of Ms. Hill, I note that two of the remaining jurors of the 11 are African-American women. And he's just saying, normally I wouldn't say anything about it, but under these circumstances, given the accusations Ms. Hill is making about the jury, he notes it. I don't know whether it's relevant or not, but I wanted to give you that record site. The case is submitted, and we'll go to the final.